

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TYANNA and JEFF CANNATA )
individually and on behalf of all )
persons similarly situated, )
)
)
Plaintiffs, )
)
v. ) No. 06 C 2196
)
FOREST PRESERVE DISTRICT ) Judge William J. Hibbler
of DU PAGE COUNTY, a municipal )
corporation, and BFI WASTE )
SYSTEMS of NORTH AMERICA, )
INC., a Delaware corporation, )
Individually and as successor by )
Merger to E & E Hauling Inc. and )
Browning-Ferris Industries of )
Illinois, Inc. )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Tyanna and Jeff Cannata ("Plaintiffs") filed a six-count complaint against Forest Preserve District of DuPage County ("Forest Preserve"), a municipal corporation, and BFI Waste Systems of North America, Inc. (individually and as successor by merger to both E & E Hauling, Inc. and Browning-Ferris Industries of Illinois, Inc.)("BFI"). In Count I, Plaintiffs assert a claim under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq. In Count II, Plaintiffs assert a claim under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §6901 et seq. In Counts III through VI, Plaintiffs assert state law claims of negligence, private nuisance, trespass, and willful and wanton misconduct. Before the Court, Defendants now move to dismiss Plaintiffs' amended complaint and move to strike Plaintiffs'

CERCLA class allegations. For the reasons set forth below, Defendants' *Rule 12(b)(1) and 12(b)(6)* motion to dismiss and *Rule 12(f)* motion to strike are DENIED.

## I. Factual Background

A.  Facts relevant for the motion

In resolving a motion to dismiss, the Court takes as true the following facts from Plaintiffs' complaint. Since 1987, when BFI acquired E&E Hauling, Inc. in a merger, BFI has operated the Mallard Lake Landfill (the "Landfill"), which is located near Hanover Park, Illinois. Prior to 1987, E&E Hauling, Inc. owned the Landfill. The Landfill is located on land owned by the Forest Preserve. A portion of the Landfill was originally operated as a sanitary waste landfill, and other portions of the landfill received other forms of waste, including hazardous waste, from various waste haulers. Plaintiffs purport that only limited portions of the Landfill contained any form of composite liner and other portions are unlined. The Plaintiffs further allege that hazardous substances, such as vinyl chloride and cis 1,2 Dichloroethene ("cis 1, 2"), dumped in the Landfill have contaminated the aquifer beneath the Landfill. The contaminated aquifer is utilized by the class members as a domestic water supply.

Plaintiffs filed this lawsuit on behalf of a class of persons and non-governmental entities owning property near the Landfill. Plaintiffs allege that "The groundwater and properties of Plaintiffs and residents throughout the Class are contaminated with hazardous substances, including hazardous wasters such as vinyl chloride and cis 1, 2 ("cis 1, 2") from the Mallard Lake Landfill." Additionally, Plaintiffs contend that Defendants are responsible for the contamination in the Landfill, and have failed to investigate or abate the resulting contamination.

2

B.  CERCLA and RCRA

The CERCLA generally "permits a plaintiff to challenge cleanup efforts at Superfund sites once the Environmental Protection Agency ("EPA") and other responsible parties proclaim their work to be completed." *Frey v. E.P.A.*, 403 F.3d 828, 829 (7th Cir. 2005); *see* 42 U.S.C. § 9613(h)(4). Sites listed as CERCLA priority are entitled to EPA cleanup funding under a general federal fund for hazardous waste management. 42 U.S.C. § 9611. Under CERCLA, the EPA has the authority to effectuate toxic waste cleanup in a couple of ways. First, it can take responsive action itself and then seek reimbursement from the potentially responsible party. 42 U.S.C. § 9607(a)(4)(A). Second, the EPA may require the responsible party to clean up the property. 42 U.S.C. § 9606(a). CERCLA also permits private citizens to "assume the financial responsibility of cleanup by allowing them to seek recovery" from responsible parties. *T&B Limited, Inc. v. City of Chi.*, 369 F. Supp.2d 989, 994 (N.D. Ill. 2005)(*citing Young v. United States*, 394 F.3d 858, 862 (10th Cir. 2005)).

The RCRA is "a comprehensive statute governing the treatment, storage and disposal of hazardous waste." *Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 972 (7th Cir. 2002); *City of Chicago v. Environmental Defense Fund*, 511 U.S. 328, 331, 128 L. Ed. 2d 302, 114 S. Ct. 1588 (1994). The primary purpose of the statute is to "limit the harmful effects of hazardous waste 'to minimize the present and future threat to human health and the environment.'" 42 U.S.C. §6902(b); *Albany Bank & Trust Co.*, 310 F.3d at 972. Private citizens are allowed to bring private suits under RCRA in certain circumstances. In particular, the statute provides a citizen with the right to bring suit "against any person, including . . . any past or present generator . . . who has contributed or who is contributing to the past or present handling . . . of any solid or hazardous waste

3

which may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. §§ 6902(b), 6972(a)(1)(B). Moreover, Section 6972(a)(1)(B) of RCRA "provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief." *T&B Limited, Inc.*, 369 F. Supp. 2d at 993 (*citing Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1040 (9th Cir. 2005)). The RCRA, however, also provides two exceptions precluding a private cause of action. Specifically, private citizen are prohibited from bringing action where the federal or state authorities has either: 1) engaged in specific removal or remedial actions under CERCLA or 2) commenced a lawsuit under RCRA (a)(1)(B) or CERCLA § 106. See U.S.C. § 6972(b)(2)(B) and (C).

## II. Standard of Review

Motions to dismiss under *Rule 12(b)(6)* test the sufficiency of the complaint rather than the merits of the case. *Midwest Gas. Serv. v. Indiana Gas Co.*, 317 F.3d 703, 714 (7th Cir. 2003). In reviewing a motion to dismiss, a court construes all allegations in the complaint in the light most favorable to the plaintiff, taking all well-pleaded facts and allegations within the complaint as true. *Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 971 (7th Cir. 2002); *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675 (7th Cir. 2000). The moving party bears the burden of showing beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957). A complaint is not required to allege all or any of the facts logically entailed by the claim. *Bennet v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998). In considering a motion to dismiss, a court may not consider matters outside the pleadings without converting the motion to a motion for summary judgment. *See* Fed. R. Civ. P 12(b).

4

In addition, when reviewing a motion to dismiss for lack of standing under Rule 12(b)(1), the "court must accept as true all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor." *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003).

### III. Analysis

A.  Supplemental Jurisdiction

Defendants argue that the Court should decline to exercise supplemental jurisdiction over plaintiffs' state law claims for negligence, nuisance, trespass, and willful and wanton misconduct because they expand the scope of liability, defenses, and remedies during discovery and trial; and, further, predominate over the Plaintiffs' CERCLA and RCRA claims. Plaintiffs contend that this Court should exercise supplemental jurisdiction over the state law claims because they derive from a common nucleus of operative facts.

The basis for this court's jurisdiction on Counts III through IV is 28 U.S.C. § 1367, which grants federal district courts supplemental jurisdiction over all claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right." *United Mine Workers of Amer. v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966). Judicial power exists to hear both state and federal claims if the federal claim has substance sufficient to confer subject matter jurisdiction on the court and if the claims "derive from a common nucleus of operative fact." *Id.* at 725. The Court may also decline to exercise supplemental jurisdiction over a claim if "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over

5

which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c).

Applying that law here, this Court can rightfully exercise jurisdiction over the related state-law claims raised by the plaintiffs. The plaintiff's state-law claims of negligence, nuisance, trespass, and willful and wanton misconduct relate directly to the same case or controversy of the federal CERCLA and RCRA claims. Indeed, both the federal and state claims derive from a common nucleus of operative fact - - that Defendants engaged in conduct, which resulted in the contamination of Plaintiffs domestic water supply - - and thus, should be tried in the same proceeding. Further, it is not evident to this Court that the possibility of differing relief should preclude this Court from exercising jurisdiction over this matter. Therefore, applying the concept of common law pendent jurisdiction, the Court has jurisdiction over the plaintiff's state-law claims.

B. Abstention

Defendants argue that this Court should decline to exercise federal jurisdiction based upon the abstention doctrine set forth in *Buford v. Sun Oil Co.*, 319 U.S. 315, 332-33, 87 L.ED 1424. 63 S. Ct. 1098 (1943) or, in the alternative, under the theory of primary jurisdiction. Specifically, Defendants contend that this Court should decline jurisdiction because: (1) the requested relief involves complex scientific matters which may fall outside of this Court's expertise; (2) the subject matter of the suit involves technical issues and policy considerations that are primarily lie within the Illinois Environmental Protection Agency's expertise and historical knowledge; (3) the matter involves an exercise of discretion, which is best handled by the IEPA administration; (4) Illinois has established regulations to ensure safe and consistent management of landfills; (5) the Courts final determination may be inconsistent or in opposition with IEPA's findings; (6) the IEPA is currently

6

and has been reviewing the maintenance of the Landfill; (7) judicial economy is best served by having the IEPA resolve the RCRA issues, and finally, (8) referring the matter to the IEPA will prevent protracted litigation and expense.

Plaintiffs argue that abstention is not proper based on Congress' designation that federal courts have subject matter jurisdiction of RCRA citizen's suit claims. Further, Plaintiffs' allege that noted exceptions in which RCRA precludes a citizen's suit claim are not applicable in the instant case.

Where jurisdiction is found as defined by congressional action, a court cannot abdicate its "authority or duty in any case in favor of another jurisdiction." *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 358, 105 L. Ed. 2d 298, 109 S. Ct. 2506 (1989). Only in exceptional cases may a court exercise its discretion to withhold otherwise authorized equitable relief. *Id.* at 359. Only in a limited class of cases, where undue interference with state proceedings will result, may a court abstain from jurisdiction. *Id.* Such abstention is within the discretion of the court, but it should only be exercised under exceptional circumstances. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 710, 135 L. Ed. 2d 1, 116 S. Ct. 1712 (1996). Finally, the burden of persuading the court lies not in a party convincing the court that it should exercise abstention, but in a party convincing the court that "exceptional" circumstances exist that would clearly justify such abstention. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 25-26, 74 L. Ed. 2d 765, 103 S. Ct. 927 (1983).

1. *Burford* Abstention

Under the *Burford* doctrine, a federal court should abstain from deciding an unsettled question

of state law that relates to a complex state regulatory scheme. Specifically, the *Burford* abstention involves situations where there exist "'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar'" or where the federal case "'would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *New Orleans Pub. Serv.*, 491 U.S. at 361(*quoting Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814, 47 L.Ed. 2d 483, 96 S. Ct. 1236 (1976)). The Seventh Circuit has stated that a district court should consider the following factors when determining whether to abstain pursuant to *Burford*:

> (1) whether the suit is based on a cause of action which is exclusively federal; (2) whether difficult or unusual state laws are at issue; (3) whether there is a need for coherent state doctrine in the area; and (4) whether stated procedures indicate a desire to create special state forums to adjudicate the issues presented.

*Time Warner Cable v. Doyle*, 66 F.3d 867, 874 n.6 (7th Cir. 1995); see also *Gen. Ry. Signal Co. v. Corcoran*, 921 F.2d 700, 708-09 (7th Cir. 1991).

      i. Exclusively Federal Cause of Action

First, the Court must determine whether the present cause of action is exclusively federal. In Count I and II, Plaintiffs assert a federal law CERCLA claim and a RCRA claim, respectively. The remaining counts entail four state law claims. Pursuant to the RCRA, actions may be brought in "the district court in which the alleged violation occurred or the alleged endangerment may occur." 42 U.S.C. § 6972(a)(2). Additionally, this Court has exclusive jurisdiction over Plaintiffs' CERCLA claims. *See 42 U.S.C. § 9613*. Therefore, because the state courts could not adjudicate Plaintiffs' CERCLA claims, the *Burford* abstention would be inappropriate. *New Orleans Pub. Serv.*, 491 U.S. at 361.

8

ii. Difficult or Unusual State Laws

Next, the Court should consider whether there are any difficult or unusual state laws at issue. Defendants assert the IEPA's program entails a complex and comprehensive regulatory and statutory scheme for enforcing environmental regulations. See 415 ILL. COMP. STAT. 5/4 (e), (g), (h). Therefore, Defendants argue that a citizen suit would disrupt the IEPA's proceedings and may create inconsistent resolutions. Further, Defendants assert that currently the Landfill is subject to IEPA investigation for alleged groundwater contamination in the class area involving them in a complex web of state regulation and law. The Court does not find these arguments persuasive.

The Seventh Circuit has determined that RCRA actions are not precluded by the mere existence of a state agency designated to protect the environment. *See PMC, Inc. v. Sherwin-Williams Co.*, 151 F.3d 610, 618 (7th Cir. 1998). Further, it appears that one reason for dismissing a RCRA suit would be if the state were already diligently prosecuting a RCRA or CERCLA action. 42 U.S.C. §§ 6972(a)(1)(B) and (b)(2)(C). The Court has not found that there are any formal agency proceedings or conditions against the Defendants which would preclude this Court's jurisdiction. Moreover, "the difficulty of determining just what agency action or overview is sufficient to cause the court to abstain under Burford is too great, and beyond what Congress intended when it enacted RCRA." *See Spillane et al. v. Commonwealth Edison Company, et al.*, 291 F. Supp. 2d 728, 733 (citing *PMC*, 151 F.3d at 618-19). Therefore, this factor also weighs against *Burford* abstention.

iii. Need for Coherent State Doctrine

Additionally, the Court must consider whether there is need for coherent state doctrine in this area. The Court notes that, "While Burford is concerned with protecting complex state

9

administrative processes from undue federal interference, it does not require abstention whenever there exists such a process, or even in all cases where there is a 'potential for conflict' with state regulatory law or policy." *New Orleans Pub. Serv. Inc.*, 491 U.S. at 362 (quoting Colorado River, 424 U.S. at 815-16).

The Court, however, is not persuaded, that its resolution of the instant case would interfere with Illinois' regulatory law or policy. Further, Defendants have failed to demonstrate how this Court's adjudication in the instant case would interfere with the state's development of a coherent developmental policy. Therefore, the Court finds that this factor also weighs against the *Buford* abstention.

### iv. Special State Forum

Finally, the Court must consider whether state procedures indicate a desire to create a special state forum to adjudicate the issues presented. A "special forum is one that 'stand[s] in a special relationship of technical oversight or concentrated review to the evaluation of . . . claims arising under the state administrative scheme at issue." *Morton College Board of Trustees of Ill. Comm. College Dist. No. 527 v. The Town of Cicero*, 18 F. Supp.2d 921, 927 (N.D. Ill. 1998). The Illinois legislature has established the Illinois Environmental Agency which exists to investigate and administer the Illinois Environmental Act. 415 ILCS 5/1 *et seq*. While Defendants maintain that the IEPA is "currently evaluating" permit modifications submitted by BFI, the Court is not persuaded that this would preclude Plaintiffs for seeking relief through CERCLA and the RCRA. The only jurisdictional restraints on a RCRA citizen suit is if the State or Agency has commenced prosecution or is diligently cleaning up a site under RCRA or CERCLA. 42 U.S.C. § 6972(b)(1), (2)(A)-- (C). The RCRA does not require plaintiffs to exhaust state remedies prior to initiating federal

proceedings. 42 U.S.C. § 6972(f). Moreover, the IEPA is precluded from considering Plaintiffs' CERCLA and RCRA cause of action.

As explained in *Spillane*, "the question that must be considered is whether the instant case involves 'exceptional circumstances' where federal court review would disrupt a coordinated administrative effort by a state agency. *Spillane, et al. v Commonwealth Edison Co., et al*, 291 F. Supp2d 728,734. (N.D. Ill. 2003). Further, the court explained "ultimately, what is at stake is the interest of the federal court in retaining jurisdiction, especially in matters involving federal rights, versus the state's interest in adjudicating issues best handled in a state forum and the state's interest in maintaining uniformity in the treatment of local problems." *Id.*(*citing White & Brewer Trucking Inc. v. Donley, et al*, 952 F. Supp. 1306, 1314 (N.D. Ill 1997)(citations omitted). The Court finds that its review would not impede local action. Accordingly, this Court declines to invoke Burford abstention in this case.

2. Primary Jurisdiction

Defendants argue in the alternative that the Court should defer to the IEPA under the theory of primary jurisdiction. This abstention doctrine is based on judicial deference to agency expertise and adjudicatory powers and removes plaintiffs from the courts to an agency hearing in the first, and often last resort. *PMC*, 151 F.3d at 619. In *PMC*, the Seventh Circuit reasoned that in 42 U.S.C. §§ 6972(a)(1)(B) and (b)(2)(C) Congress "specified the conditions under which the pendency of other proceedings bars suit under RCRA." *Id.* This Court finds that those conditions have not met and for the same reasons discussed above with regard to *Burford*, abstention under the primary jurisdiction doctrine is not warranted here.

11

C.      Motion to Strike

Defendants seek to strike Plaintiffs' CERCLA class allegations because Plaintiff fails to allege that all class members had incurred or will incur response cost. In particular, Defendants maintain that pursuant to CERCLA, "the incurrence of recoverable response costs is an element of liability and not merely a number to be calculated when liability is proven." (Def. Reply pg. 12). Federal Rule of Civil Procedure 12(f) provides that "upon motion made by a party . . . the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Generally, motions to strike are disfavored, and the court will not strike matter from a complaint unless it is clear that it can have no possible bearing on the matter of the litigation. *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989). The decision whether to strike material is within the discretion of the court. *Talbot v. Robert Matthews Dist. Co.*, 961 F.2d 654, 665 (7th Cir. 1992).

The ground cited by the defendants for invoking Rule 12(f)--the failure to sufficiently allege response cost--does not fit into any category of material the Court is authorized to strike under 12(f). Moreover, it appears that Plaintiff has sufficiently pled that Plaintiffs and members of the class have and will continue to incur "response costs" within the meaning of CERCLA. Therefore, Defendants' Motion to Strike is denied.

## IV. Conclusion

For the reasons stated above, Defendants Forest Preserve and BFI's motion to dismiss and motion to strike are DENIED.

IT IS SO ORDERED.

_10/11/06_
Dated

_Wm. J. Hibbler_
The Honorable William J. Hibbler
United States District Court