UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **TYANNA AND JEFF CANNATA,** individually, and on behalf of all persons similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> **FOREST PRESERVE DISTRICT OF DUPAGE COUNTY**, a municipal corporation, and **BFI WASTE SYSTEMS OF NORTH AMERICA, INC.**, a Delaware corporation, individually and as successor by merger to E & E Hauling, Inc. and Browning-Ferris Industries of Illinois, Inc., <br><br> Defendants. | No. 06 C 2196 <br><br> The Honorable William J. Hibbler |

**PLANTIFFS' SUPPLEMENTAL MEMORANDUM CONCERNING RECENTLY-GENERATED ENVIRONMENTAL TEST RESULTS, IN FURTHER OPPOSITION TO DEFENDANTS'** ***DAUBERT*** **AND SUMMARY JUDGMENT MOTIONS**

**INTRODUCTION**

The results of environmental testing forced on Defendants by the United States EPA since the close of briefing on Defendants' dispositive motions have proven as ***indisputably false*** the central argument of those motions, i.e., that there is no physical way (no "pathway") for contamination to have traveled from the Landfill to the Class Area. Indeed, those test results confirm that massive quantities of Landfill gas have been bursting underground out of the Landfill's west side for years, driving Landfill contamination into the groundwater flow line that, as BFI's top groundwater consultant admits, ***leads directly into the Class Area's groundwater.***

Accordingly, for this additional reason, Defendants' dispositive motions must be denied.

## ARGUMENT

As this Court is aware, Plaintiffs' expert Dr. Neil Williams has opined, *inter alia*, that the Landfill is the source of Class Area groundwater contamination. More specifically, in his reports previously filed by Plaintiffs, Dr. Williams has concluded that, *inter alia*, gas from the Landfill has caused the contamination in the Class Area's groundwater:

> [M]illions of gallons of hazardous wastes, including solvents which degraded into Vinyl Chloride (a known human carcinogen) and DCE, the contaminants found in the Class Area, were dumped into huge excavations on the west side of the South Hill of the landfill carved to within feet of the aquifer serving the Class Area homes (and many others). Due to the irresponsible behavior of the Defendants and inadequate regulation by [Illinois EPA], ***massive levels of leachate and landfill gas which include dangerous levels of the chemicals found in the Class Area were allowed to build up over the years and drive these harmful chemicals out of the landfill from the west side of the site and into the Class Area.*** (*See* Expert Report of Dr. Neil Williams, at p. 43, attached as Ex. 20 to Docket No. 183.) (emphasis added)

Dr. Williams' conclusions were supported by numerous analyses of Defendants themselves, and of the Illinois EPA, which recognized that groundwater indeed did flow (in a southwesterly direction) from the Landfill to the Class Area. (*See* Docket No. 183, at pp. 11-13.) These analyses prominently included the testimony of BFI's top groundwater consultant, Craig Rawlinson, and a map he drew showing how groundwater flowed from the Landfill's west side to the Class Area. (*See* Docket No. 183, at pp. 5, 13.) This map is also attached as Exhibit A.

In their dispositive motions, Defendants tried to discredit their own admissions of groundwater flow between the Landfill and Class Area (*see* Docket No. 192, at pp. 9-11), and attacked and ridiculed Dr. Williams, repeatedly proclaiming that there is no "pathway" which would even allow the contamination to travel from the Landfill to the Class Area. (*See, e.g.*, Docket No. 158, at pp. 5-11; Docket No. 156.)

2

However, as shown below, recent testing which USEPA has forced Defendants to undertake has proven not only that this pathway exists but that contamination has traveled through it, and continues to do so to this very day.

### Landfill Gas Causes Groundwater Contamination

Dangerous (literally called "alarm") levels of landfill gas have been detected on the Landfill's west side since at least 1985. (*See* letter from Testing Services Corp. to FPD, dated September 11, 1985, at "Table I," attached hereto as Exhibit B.) However, despite knowing that this Landfill gas had likely traveled farther, Defendants never voluntarily tested to see how far, in fact, it had traveled. (*See* Deposition of Craig Rawlinson, at p. 140, attached hereto as Exhibit C.)

The very presence of Landfill gas is significant for many reasons, including the fact that, as Defendants have "stipulated [] in many of [their] reports," the gas was discovered years ago to have caused the contamination of area groundwater. (*See* Exhibit C, at p. 142.) These gas-driven contaminants include vinyl chloride, the chemical most prominently detected in Class Area groundwater. Indeed, as the USEPA notes on its web page dedicated specifically to the Landfill:

> This landfill gas has historically contained high levels of Volatile Organic Compounds including vinyl chloride *which was reported by the landfill operator [i.e. BFI] to lead to ground water contamination* exceeding the Maximum Concentration Limit (MCL) for vinyl chloride at the Western perimeter of the landfill. USEPA, *Site Profile for Mallard Lake Landfill*, at http://www.epaosc.net/site_profile.asp?site_id=3682 (last visited Feb. 13, 2008). (emphasis added)

### Defendants Admit That the Presence of Landfill Gas Reveals a Pathway For Contamination To Travel Between The Landfill And Class Area

BFI's Rawlinson knew that the Landfill gas contained vinyl chloride; that it had already contaminated groundwater; and that, therefore, anywhere there was landfill gas, there was the possibility of vinyl-chloride-contaminated groundwater. (*See* Exhibit C, at pp. 108-09; 139-40;

3

142.) More specifically, Rawlinson recognized—and told BFI—*that if contaminated Landfill gas were found to have traveled just one-half to three-quarters of a mile to the Landfill's west side, it would drive contamination right into the groundwater flow line that leads directly into the Class Area.* (*See* Exhibit C, at pp. 132; 137-40.) Under such circumstances, as Rawlinson testified in this case, the Landfill could indeed be the source of the Class Area's groundwater contamination. (*See* Exhibit C, at pp. 139-40.)

Rawlinson thus recommended to his client that it test to see if in fact this pathway existed, i.e., that it test to see if Landfill gas had traveled this one-half to three-quarters of a mile to the Landfill's west. But, BFI never followed Rawlinson's recommendation. (*See* Exhibit C, at pp. 132, 140.)

**USEPA Forces Testing For Landfill Gas Pathway; Results Prove Pathway's Existence, i.e., That Landfill Gas Has Traveled To The Class Area Groundwater Flow Line**

Enter USEPA. In 2007, USEPA became concerned about the high levels of Landfill gas historically found, *inter alia*, on the Landfill's west side, especially since the gas was already known to have caused groundwater contamination. USEPA, *Pollution Report Profile for the Mallard Lake Landfill, at* http://www.epaosc.net/polrep_profile.asp?site_id=3682 (last visited Feb. 13, 2008). USEPA thus directed Defendants to undertake the testing recommended earlier by Rawlinson, but ignored by Defendants, i.e., to determine how far Landfill gas had traveled to the west. (*Id.*) This testing has gone on since November of 2007, and continues until today. (*Id.*)

The results of this testing are depicted on USEPA's web page, the most recent version of which (as of January 25, 2008) is attached here as Exhibit D. (*See* USEPA, *Cone Penetrometer Locations and Methane Gas Probe Readings as of Jan. 25, 2008, available at* http://www.epaosc.net/sites/3682/files/figure%202-cpt%20installations_012508.pdf. (attached as Exhibit D). The Landfill gas detections are indicated in pink (non-detects in blue). As can

4

readily be seen, the detections of Landfill gas have traveled well beyond the one-half to three-quarters of a mile distance from the Landfill that BFI's Rawlinson testified would provide the circumstances for contaminated Landfill gas to connect with the groundwater flow line leading directly into the Class Area. Indeed, that Landfill gas has traveled to, and beyond, the one-half to three-quarter mile point – and thus, according to BFI's Rawlinson, intersecting groundwater that flows into the Class Area – is plainly shown by the attached Exhibit E. This exhibit graphically demonstrates that Landfill gas has been detected to have traveled far more than one-half mile, and even more than three-quarters of a mile, to the west of the Landfill.

Accordingly, these recently-generated environmental test results provide an additional reason why Defendants' *Daubert* and summary judgment motions should be denied.

Dated: February 19, 2008

Respectfully submitted,
**TYANNA AND JEFF CANNATA,** individually, and on behalf of all persons similarly situated,

By: s/ Shawn M. Collins
One of Plaintiffs' Attorneys

| | |
|---|---|
| Shawn M. Collins | Norman B. Berger |
| Edward J. Manzke | Michael D. Hayes |
| Aaron W. Rapier | Anne E. Viner |
| THE COLLINS LAW FIRM, P.C. | VARGA BERGER LEDSKY HAYES & CASEY PC |
| 1770 N. Park Street, Suite 200 | 224 South Michigan Avenue, Suite 350 |
| Naperville, Illinois 60563 | Chicago, Illinois 60604 |
| (630) 527-1595 | (312) 341-9400 |

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of **Plaintiffs' Supplemental Memorandum Concerning Recently-Generated Environmental Test Results, in Further Opposition to Defendants' *Daubert* and Summary Judgment Motions** was electronically served on all counsel of record as a result of the CM/ECF filing of this document on February 19, 2008.

By: s/ Shawn M. Collins
One of Plaintiffs' Attorneys

| | |
|---|---|
| Shawn M. Collins | Norman B. Berger |
| Edward J. Manzke | Michael D. Hayes |
| Aaron W. Rapier | Anne E. Viner |
| THE COLLINS LAW FIRM, P.C. | VARGA BERGER LEDSKY HAYES & CASEY |
| 1770 N. Park Street | A Professional Corporation |
| Suite 200 | 224 South Michigan Avenue, Suite 350 |
| Naperville, Illinois 60563 | Chicago, Illinois 60604 |
| (630) 527-1595 | (312) 341-9400 |