

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TYANNA CANNATA, *et al.*, | ) | No.    06 C 2196 |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | The Honorable William J. Hibbler |
| | ) | |
| v. | ) | |
| | ) | |
| FOREST PRESERVE DISTRICT OF | ) | |
| DUPAGE COUINTY, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

Plaintiffs Tyanna and Jeff Cannata filed a six-count complaint against the Forest Preserve

District of DuPage County and BFI Waste Systems of North America, Inc.  The plaintiffs

assert claims under the Comprehensive Environmental Response Compensation and

Liability Act ("CERCLA") 42 U.S.C. § 9601 et seq., the Resource Conservation and

Recovery Act ("RCRA") 42 U.S.C. § 6901 et seq., and state claims including negligence,

private nuisance, willful and wanton misconduct and trespass.  The defendants have

moved for summary judgment on the RCRA claim asserting the Cannatas lack standing.

For the reasons set forth below, the defendants' motion for summary judgment is

DENIED.

## I.    Factual Background

The Mallard Landfill is located near Hanover Park, Illinois and contains approximately 230-250 acres of waste. BFI operates the Landfill and the Forest Preserve District of DuPage County owns the property on which the Landfill sits. The Cannatas claim the defendants mishandled the storage and disposal of waste from the Landfill, which caused the water beneath their home to become contaminated with dangerous carcinogens including vinyl chloride and cis-1, 2 dichloroetheneothe. The Cannatas live about two miles from the Landfill and claim as many as a 150 people living in their area could have contaminated drinking water. Therefore, to avoid multiple trials on the same issue, the Court granted class action certification on October 11, 2006. Subsequently, the Cannatas sealed the well which had previously supplied their drinking water and connected their home to a public water supply. The Cannatas also purchased a home water filtration system. The Cannatas acknowledge that due to these safety measures, their drinking water no longer contains vinyl chloride or cis-1, 2 dichloroetheneothe.

## II.    Standard of Review

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The moving party bears the initial burden of demonstrating there is no genuine issue of material fact, and that judgment as a matter of law should be granted in their favor. *Celotex, 477 U.S. 324.* Once the moving party has met the initial burden, the nonmoving party must produce specific facts showing that there is a genuine issue of material fact and that the moving

2

party is not entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Finally, all evidence and inferences must be viewed in the light most favorable to the nonmoving party. *Id.* at 255.

## III. Analysis

The defendants assert the Cannatas lack standing because the Cannatas' drinking water now comes from the uncontaminated public water supply. Therefore, the defendants argue there is no injury for the Court to redress. In response, the Cannatas contend that once the Court granted class certification their standing was established and can not be challenged. Moreover, the Cannatas argue that even if the Court allowed the defendants to raise the issue, they possess all the necessary elements for standing.

### A. *The Cannatas' Standing Can Be Challenged*

A court must first determine whether it has jurisdiction before it can evaluate the merits of a case. *Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 769-772, 120 S. Ct. 1858, 146 L. Ed. 2d 836 (2000) ("Questions of jurisdiction, of course, should be given priority—since if there is no jurisdiction there is no authority to sit in judgment of anything else."). Article III of the Constitution limits the jurisdiction of federal courts to actual cases and controversies. Thus, courts use the doctrine of standing to identify those disputes which are appropriately resolved via the judicial process. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1990). When this Court granted class certification it acknowledged that the Cannatas had standing. The Cannatas argue this ends the standing inquiry for the duration of the lawsuit; this argument fails.

The Court notes that as a general rule once jurisdiction is acquired, a change of circumstances will not strip the Court of the ability to hear the case. But, as the Seventh Circuit has pointed out:

> Like most legal generalizations, however, the principle that jurisdiction once acquired is not defeated by a change of circumstances is not exceptionless. The chief exception is that the existence of a case or controversy in the Article III sense, that is a real dispute between parties with tangible stakes in the outcome, *must be continuous from the beginning of the suit to the end.* If a case becomes moot, the court loses jurisdiction even though the case was not moot when filed.

*Ganci v. Edgar,* 163 F.3d 430 (7th Cir. 1998) (emphasis added) (internal citations omitted). Therefore, an actual case or controversy must exist at all times during the pendency of litigation. *Portis v. City of Chicago,* 347 F. Supp. 2d 573, 574 (N.D. Ill. Nov. 24, 2004) ("Article III of the Constitution requires the existence of an actual case or controversy, not only upon initiation of the action, but at every phase of the proceedings."). For example, in *Thomas v. Fielder,* a group individuals arrested for drunk driving sought to bring a class action lawsuit challenging the statute that authorized the confiscation of their licenses. 884 F. 2d 990 (7th Cir. 1989). After the district court granted class certification, the statute was amended in a manner favorable to the plaintiffs. *Id.* at 994. The Seventh Circuit held that despite the court's prior grant of class certification, the plaintiffs lacked standing because their claims had become moot. *Id.* at 996. *Cf. Jones v. Sullivan* 938 F.2d 801, 802 (7th Cir. 1991) ("[A]ctual case or controversy must exist, not only at the date the action is initiated, but at every stage of the trial and appellate proceedings.") (internal citations omitted).

Federal courts have no business deciding hypothetical disputes. *Wisconsin. Right to Life, Inc. v. Schober,* 366 F.3d 485, 488 (7th Cir. 2004) (explaining that Article III ensures "that the resources of the federal judiciary are not expended on advisory opinions

and hypothetical disputes"); *United States v. 5 S 351 Tuthill Rd.*, 233 F.3d 1017, 1022
(7th Cir. 2000) ("We require a plaintiff to demonstrate standing in order to assure that we
are refereeing an actual, rather than a hypothetical, dispute."). Accordingly, courts are
obligated to make sure that plaintiffs have standing during every stage of litigation. The
Court agrees with the defendants; if there has been a material change in the parties'
circumstances then the plaintiffs' standing can be challenged despite a previous class
certification Order.

B.      *The Cannatas have Standing to Pursue this Action*

        A plaintiff must satisfy three elements to have standing: (1) the plaintiff must
have suffered an injury in fact that is (a) concrete and particularized; and (b) imminent as
opposed to conjectural or hypothetical; (2) there must be a causal connection between the
plaintiff's injury and the defendant's alleged conduct; and (3) it must be likely as opposed
to merely speculative that the injury will be redressed by a favorable decision on behalf
of the plaintiff. *Lujan*, at 560-561. The defendants' argument is that the Cannatas'
"admissions that they are not exposed to any contaminants establishes that the Cannatas
have no current harm or any current threat of future harm that is imminent." (Def. Reply
Br. at 4). To bolster their case, the defendants rely primarily on the Supreme Court's
decision in *Lujan v. Defenders of Wildlife*.

        At issue in *Lujan* was whether the plaintiffs had standing to challenge a rule
promulgated by the Secretary of the Interior interpreting the Endangered Species Act.
504 U.S. at 557. The plaintiffs—members of various wildlife conservation
organizations—alleged that the Secretary's ruling would lead to the extinction of
endangered species like the Egyptian Crocodile and the Sri Lankan Leopard. *Id.* at 563.

5

Consequently, the plaintiffs claimed they were injured because the next time they travelled abroad their chances of observing these animals would be diminished. *Id.*

The Supreme Court began its analysis by noting that to survive summary judgment the plaintiffs had to submit affidavits showing through specific facts that they would be directly affected and injured. *Id.* The plaintiffs submitted affidavits stating they "hoped" and "intended" to go back to Egypt and Sri Lanka, but that they had no current plans to do so. *Id.* The Court rejected this injury as too theoretical:

> The affiants' profession of an intent to return to the places they had visited before – where they will presumably, this time, be deprived of the opportunity to observe animals of the endangered species – is simply not enough. Such some day intentions – without any description of concrete plans, or indeed even any specification of when the some day will be – do not support a finding of the actual or imminent injury that our cases require.

*Id.* at 564. The Court then reaffirmed the maxim that past exposure to illegal conduct is not enough to establish standing unless the plaintiffs can show "continuing, present adverse effects." *Id.*

The defendants argue that Tyanna Cannata's affidavit is so similar to the affidavit in *Lujan* that the same result is warranted. Cannata's affidavit states: (1) The Cannatas stopped using their well only *after* they detected the subsurface contamination; (2) The defendants have not paid for any costs associated with connecting the Cannatas' to the clean water supply; (3) The contamination remains beneath the Cannatas' home; and (4) If the contamination was removed then the Cannatas may once again start using their well as a source for water. (Ex. A to Pl. 56.1(b)(3) Resp.) In moving for summary judgment the defendants have drawn an analogy between the Cannatas and the plaintiffs in *Lujan*. This analogy, however, does not pass muster.

6

The plaintiffs in *Lujan* claimed they were injured because their chances of observing endangered animals might be diminished. Although the case was decided in 1992, one plaintiff testified that she had not traveled to Egypt since 1986 and the other testified that she had not been to Sri Lanka since 1981. *Lujan* at 563. By contrast, the Cannatas' proffered injury is that they were forced to stop drinking from their well because the water was contaminated. There can be no comparison between the plaintiffs in *Lujan* who had not been abroad in years and had no plans to go back, and the Cannatas who used their well on a *daily basis*, but were forced to give up their preferred source of water.

Secondly, despite the Secretary's interpretation of the Act, the *Lujan* plaintiffs may have still been able to observe endangered animals, but they had not traveled abroad to try and do so. Thus, the impact of the Act on the plaintiffs was purely speculative. The Cannatas, however, *have tried* to use their well as a source for water but they were thwarted because of the alleged contamination. The fact that the Cannatas sealed their well at their own expense and connected their home to the public water supply lends credence to their claim that their alleged injury—being unable to use their well because of contaminated water beneath their home—is very real and concrete. Indeed, it was an independent organization—the DuPage County Health Department—that notified the Cannatas that vinyl chloride was detected in their well water. (Pl. Resp. to Def. BFI's Request to Admit #9) In the Court's estimation, the Cannatas' claimed injury is much less theoretical than the "injury" in *Lujan*.

A decade after the Supreme Court's decision in *Lujan*, the Court revisited the question of standing under the federal environmental laws. In *Friends of the Earth Inc.,*

*v. Laidlaw*, the plaintiffs brought suit under the Clean Water Act alleging Laidlaw was

illegally dumping mercury into South Carolina's North Tyger River. 528 U.S. 167, 176,

120 S. Ct. 693, 145 L. Ed. 610 (2000). The plaintiffs argued that Laidlaw's pollution

forced them to refrain from fishing, canoeing, wading and swimming in the river. *Id.* at

181. Moreover, the plaintiffs claimed that if the water was cleaned up they would like to

resume these activities. *Id.* Unlike the situation in *Lujan*, the Court held that the

plaintiffs had established an injury in fact:

> [E]nvironmental plaintiffs adequately allege injury in fact when they aver that
> they use the affected area and are persons for whom the aesthetic and recreational
> values of the area will be lessened by the challenged activity.

> [T]he affidavits and testimony presented by [Plaintiffs] in this case assert that
> Liadlaw's discharges and the affiant members' reasonable concerns about the
> effects of those discharges, directly affected those affiants' recreational, aesthetic,
> and economic interests. These submissions present more than the mere general
> averments and conclusory allegations found inadequate in *[Lujan]*. Nor can the
> affiants' conditional statements – that they would use the nearby North Tyger
> river for recreation if Laidlaw were not discharging pollutants into it – be equated
> with the speculative some day intentions to visit endangered species halfway
> around the world ...

*Id.* at 183-184. (internal quotations and citations omitted). Hence, the plaintiffs were

permitted to challenge Laidlaw's methods of waste disposal.

A similar situation occurred in *Citizens for a Better Env. v. Caterpillar, Inc.*, 30 F.

Supp. 2d 1053, 1057 (C.D. Ill. 1998). In *CBE*, the plaintiffs—members of an

environmental advocacy group—brought suit under the Resource Conservation and

Recovery Act alleging that Caterpillar's disposal of waste posed a substantial threat to the

plaintiffs and the environment. The plaintiffs claimed they had to stop boating and

fishing on the Illinois River because the water was so "filthy and oil slicked." *Id.* at

1062-1063. The plaintiffs, however, stated they would like to resume these activities

when the river was cleaned up. *Id.* In response, Caterpillar acknowledged that it dumped the waste, but argued that the plaintiffs lacked standing. *Id.* at 1058.

The question before Chief Judge Mihm was "how, given that the [plaintiffs] discontinued their use of the Illinois River prior to this suit, they suffer an injury in fact due to the threat posed by the levee site to the river." *Id.* at 1069. The court acknowledged the precedent established in *Lujan*, but noted that "the lack of standing in [*Lujan*] hinged on the speculative nature of the plaintiff's interests; the environmental group members did not regularly visit these foreign places and had no immediate plans to return there." *Id.* at 1070. The court concluded that unlike the plaintiffs in *Lujan*, the plaintiffs in *CBE* had suffered a cognizable injury:

> The fact that the current environmental state of the Illinois River prohibits [plaintiff] from returning does not equate to a conclusion that his plans are not definite or concrete or that he is not injured by the imminent threat posed by the levee site to the river. His plans merely hinge on the contingency that the river be cleaned up and free of serious risk ...
>
> The [plaintiffs] are not seeking to boat in Sri Lanka or Egypt but are seeking to boat in a body of water that is at least in the [plaintiff's] case, approximately 10 to 15 minutes form their home. Accordingly, the court holds that the [plaintiffs have] established injury in fact under Article III ...

*Id.* Thus, the plaintiffs established standing despite the fact that they discontinued their use of the Illinois River.

Here, as in *Laidlaw* and *CBE*, the fact that the Cannatas stopped using the allegedly polluted area (the groundwater aquifer beneath their home) does not erase their standing to sue for the contamination of their property. Indeed, the Supreme Court has found that even a plaintiff denied *recreational* use of public land has suffered an injury. *Laidlaw* 528 U.S. at 183-184. Under this framework, certainly a plaintiff that has been forced to stop using *their own land* as a result of alleged contamination has suffered an

9

injury under Article III. *See, e.g., Covington v. Jefferson County,* 358 F.3d 626 (9th Cir. 2003) (holding that home owners have standing to sue where waste from defendant's landfill caused the groundwater under plaintiffs' property to be contaminated: "even if the only injuries alleged by the Covingtons were threats to the aesthetic and recreational enjoyment of their property, these harms occasioned by RCRA violations in context are sufficient to satisfy the injury in fact requirement.").

The Cannatas live about two miles from the Landfill. Both parties agree that the DuPage County Health Department notified the Cannatas that their well water tested positive for vinyl chloride. (Pl. Resp. to Def. BFI's Request to Admit #9) According to the Environmental Protection Agency, consumption of vinyl chloride has been shown to increase the risk of liver cancer in humans.

http://www.epa.gov/ttn/atw/hlthef/vinylchl.html (last visited July 24, 2008). The Supreme Court has remarked that the Constitution is not a "suicide pact." *Kennedy v. Mendoza-Martinez,* 372 U.S. 144, 160 (1963). In this Court's view, neither is the doctrine of standing. Therefore, the Court will not require the Cannatas to continuously consume what they believe to be contaminated water in order to keep their case in federal court.

## III.    CONCLUSION

The Court notes that the defendants have ardently denied violating any state or federal environmental laws. In finding that the Cannatas have standing, the Court is in no way commenting on the merits of the underlying case. The Court is simply holding that the Cannatas have a personal stake in the outcome of the litigation and if they were to prevail, their claimed injury could be adequately redressed by the Court.

10

For the reasons set forth in the preceding analysis, the defendants' motion for summary judgment is DENIED.

IT IS SO ORDERED.

_____7/2-1/08_____
Dated

The Honorable William J. Hibbler
United States District Court

11